IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**JAMES ALBERT TRANKLE**<br>(a/k/a "John Davis")<br><br><br>**Defendant** | **CRIMINAL No. _____**<br><br>**VIOLATIONS:**<br><br>18 U.S.C. § 1349 (Conspiracy);<br>18 U.S.C. § 1341 (Mail Fraud);<br>18 U.S.C. § 1344 (Bank Fraud); and<br>18 U.S.C. § 1028A (Aggravated Identity Theft)<br><br>**FORFEITURE ALLEGATION:**<br>18 U.S.C. §§ 981(a)(1)(C), 981(a)(2)(A);<br>28 U.S.C. § 2461(c); and<br>21 U.S.C. § 853(p)) |

## INDICTMENT

The Grand Jury for the District of Columbia charges:

### Background

At all times material herein:

1. Defendant JAMES TRANKLE resided in the State of Maryland. TRANKLE exercised control over several types of companies and organizations that purported to operate in the District of Columbia, such as the "Disabled and Paralyzed Veterans Fund," the "National Breast Cancer Awareness Fund," and the "Children's Leukemia of America Fund." On or about October 15, 2019, TRANKLE legally changed his name to "John Davis."

2. Stephen Sibert resided in the State of Maryland.

3. The District of Columbia Department of Consumer and Regulatory Affairs Corporations Division ("DCRA") registered all entities and domestic and foreign organizations that conducted business in the District of Columbia. All nonprofit corporations, for-profit

corporations, and limited liability companies that operated in the District of Columbia were required to register with the DCRA. If a business operated in the District of Columbia using a trade name (or "doing business as"), the trade name was also required to be registered with the DCRA.

4. Each of the following were financial institutions with deposits insured by the Federal Deposit Insurance Corporation ("FDIC"): BB&T, First National Bank, SunTrust Bank, PNC Bank, Severn Savings Bank, and Wells Fargo.

## COUNT ONE
### (Conspiracy to Commit Mail Fraud and Bank Fraud)

5. Paragraphs 1 through 4 of this Indictment are re-alleged.

6. Beginning in or about at least October 2013 and continuing thereafter until in or about February 2018, in the District of Columbia and elsewhere, defendant JAMES TRANKLE and Sibert (the "conspirators") did knowingly conspire, combine, confederate, and agree with each other to violate

> a. 18 U.S.C. § 1341, Mail Fraud, by having devised and intending to devise any scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, placing in any post office and authorized depository for mail matter, any matter and thing whatever to be sent and delivered by the Postal Service, and any private and commercial interstate carrier; and
>
> b. 18 U.S.C. § 1344, Bank Fraud, by executing and attempting to execute a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of a federally insured financial institution, by means of false and fraudulent pretenses, representations, and promises.

### Purpose of the Conspiracy

7. It was a purpose of the conspiracy for defendant TRANKLE and Sibert to enrich themselves by, among other things, persuading victims in the United States to send money to the

2

conspirators by U.S. mail through false promises, assurances, and representations, and then further defrauding those victims by fraudulently withdrawing funds from the victims' bank accounts with counterfeit checks.

### Manner and Means

8. Among the manner and means by which defendant TRANKLE and Sibert would and did carry out the objectives of the conspiracy were the following:

(1) The conspirators registered non-profit organizations and trade names for organizations with the DCRA which had the appearance of being legitimate charities but were in fact fraudulent, for example, the "Disabled and Paralyzed Veterans Fund," the "National Breast Cancer Awareness Fund," and the "Children's Leukemia of America Fund."

(2) The conspirators used a post office box address in Washington, D.C., as the official mailing address for their fraudulent charities in their DCRA filings.

(3) The conspirators opened numerous bank accounts in the names of their fraudulent charities.

(4) The conspirators sent solicitations via U.S. mail to thousands of potential donors—*i.e.*, victims—nationwide asking the recipients to send personal checks as donations to their fraudulent charities.

(5) The conspirators used post office box addresses in Washington, D.C., and elsewhere for corporate filings and to receive money in the form of checks from victims through the U.S. mail.

(6) The conspirators had mail that was sent to the post office box in Washington, D.C., forwarded to their addresses elsewhere.

(7) The conspirators deposited personal checks from their victims into bank accounts that the conspirators controlled at financial institutions, including SunTrust.

(8) The conspirators purchased check making supplies such as stock paper and printing equipment.

(9) Using the bank account and routing information from the victims' checks, the conspirators printed additional unauthorized counterfeit checks payable to their fraudulent charities that were drawn against the victims' personal checking accounts.

(10) The conspirators deposited the unauthorized counterfeit checks drawn on victim bank accounts into bank accounts that the conspirators controlled at financial institutions, including BB&T, First National Bank, PNC Bank, Severn Bank, and Wells Fargo.

(11) The conspirators used ATM withdrawals and debit card transactions to withdraw the proceeds of the scheme from the bank accounts that the conspirators controlled.

(12) These fraudulent charities did not perform any of the charitable work described in their solicitations to victims. Nor did the fraudulent charities provide any significant funds to other charities that did so. That is, the conspirators made minimal—often zero—contributions to charitable causes for which they solicited donations from victims.

**(Conspiracy to Commit Mail Fraud and
Bank Fraud, in violation of 18 U.S.C. § 1349)**

### COUNT TWO
**(Bank Fraud – BB&T)**

9. Paragraphs 1 through 4 and 6 through 8 of this Indictment are re-alleged.

10. Between on or about May 6, 2015, and on or about February 9, 2016 within the District of Columbia and elsewhere, defendant TRANKLE devised and intended to devise a scheme to obtain money, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution by means of false and fraudulent

pretenses, representations, and promises, to wit, depositing 433 counterfeit checks into BB&T account (x-2058) having an aggregate value of $24,564.

**(Bank Fraud, in violation of 18 U.S.C. § 1344(2))**

## COUNT THREE
### (Bank Fraud – First National Bank)

11.  Paragraphs 1 through 4 and 6 through 8 of this Indictment are re-alleged.

12.  Between on or about December 16, 2013, and on or about November 3, 2016, within the District of Columbia and elsewhere, defendant TRANKLE devised and intended to devise a scheme to obtain money, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution by means of false and fraudulent pretenses, representations, and promises, to wit, depositing 147 counterfeit checks into First National Bank account (x-7311) having an aggregate value of $72,765.

**(Bank Fraud, in violation of 18 U.S.C. § 1344(2))**

## COUNT FOUR
### (Bank Fraud – PNC Bank)

13.  Paragraphs 1 through 4 and 6 through 8 of this Indictment are re-alleged.

14.  On or about January 30, 2017, within the District of Columbia, defendant TRANKLE devised and intended to devise a scheme to obtain money, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution by means of false and fraudulent pretenses, representations, and promises, to wit, depositing three counterfeit checks into PNC Bank account (x-5829) having an aggregate value of $1,485.

**(Bank Fraud, in violation of 18 U.S.C. § 1344(2))**

## COUNT FIVE
### (Bank Fraud – Severn Bank)

15. Paragraphs 1 through 4 and 6 through 8 of this Indictment are re-alleged.

16. Between on or about August 11, 2014, and on or about January 2, 2015, within the District of Columbia and elsewhere, defendant TRANKLE devised and intended to devise a scheme to obtain money, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution by means of false and fraudulent pretenses, representations, and promises, to wit, depositing 50 counterfeit checks into Severn Bank account (x-0717) having an aggregate value of $24,750.

**(Bank Fraud, in violation of 18 U.S.C. § 1344(2))**

## COUNT SIX
### (Bank Fraud – Wells Fargo)

17. Paragraphs 1 through 4 and 6 through 8 of this Indictment are re-alleged.

18. Between on or about July 8, 2017, and on or about October 19, 2017, within the District of Columbia and elsewhere, defendant TRANKLE devised and intended to devise a scheme to obtain money, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution by means of false and fraudulent pretenses, representations, and promises, to wit, depositing 35 counterfeit checks into Wells Fargo account (x-6747) having an aggregate value of $17,325.

**(Bank Fraud, in violation of 18 U.S.C. § 1344(2))**

## COUNTS SEVEN THROUGH TEN
(Aggravated Identity Theft)

19. Paragraphs 1 through 4 and 6 through 8 of this Indictment are re-alleged.

20. On or about the following dates, in the District of Columbia and elsewhere, defendant TRANKLE did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, that is, their full name as associated with their bank account information, during and in relation to Count One of this Indictment:

| COUNT | DATE | VICTIMS |
|---|---|---|
| 7 | November 13, 2017 | D.G. and G.G. |
| 8 | November 13, 2017 | W.X.D. and X.Y.L. |
| 9 | February 2, 2018 | R.R. |
| 10 | February 2, 2018 | M.R. |

(Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A)

## FOREFEITURE ALLEGATION

21. Upon conviction of any of the offenses listed in Counts One through Six of this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), and any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of these violations, pursuant to Title 18, United States Code, Section 982(a)(2)(A). The United States will also seek a forfeiture money judgment against the defendant in the amount of $135,327.

22. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 981 (a)(2)(A), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p))**

_/s/ Matthew M. Graves_
MATTHEW M. GRAVES
United States Attorney for the
District of Columbia

A TRUE BILL

_____
Foreperson
Date: